Turley *v.* Rothman, Appellant.

Argued March 15, 1956. Before STERN, C, J., JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Harland I. Casteel,* with him *Charles Holmes Wolfe, Jr.,* and *Campbell, Houck & Thomas,* for appellant.

*A. H. Rosenberg,* with him *Rosenberg & Rosenberg,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, April 16, 1956:

Charles M. Turley and Phyllis Turley, his wife, brought a trespass action against William H. Rothman, Trading as Peoples Cab Company, as the result of an accident on December 26, 1950, when an automobile being driven by Turley collided with a taxicab owned by the defendant. Later the plaintiffs' claims were severed and Charles Turley was brought upon the record as an additional defendant as to Mrs. Turley's claim. At the same time the taxicab company asserted a claim against Charles Turley for damages to the taxicab. The jury returned a verdict of $15,000 in favor of the wife-plaintiff, $2,776 for the husband-plaintiff, and a verdict in favor of the additional defendant as to the taxicab company's counterclaim.

On the day of the accident Charles Turley, driving westwardly on Bigelow Boulevard in Pittsburgh, stopped for a red light where Bigelow Boulevard intersects with Tunnel Street. As the light changed to green, he signalled his intention to make a left turn. After he began this movement he observed that a taxicab which was on the west side of the intersecting street on Bigelow Boulevard was moving very slowly and "had almost come to a stop." Turley completed the turn and had already projected the front end of his car into Tunnel Street when the taxicab accelerated its forward movement and struck the right side of the plaintiff's car. Turley described the damage done to his car as follows: "The right door was pushed in, exposing the running board and part of the mat where you place your feet. Also the window was broken, and there was a hole pushed in the door, starting at about halfway back from the right door and gathering into a ball in the rear panel. A hole about that big [indicating a foot in diameter] . . . All of this metal was

pushed back into the right rear panel, and, if I remember correctly, the roof of the car was bulged like this."

The wife-plaintiff testified that, as a result of the impact "it threw me against the door handle, and it jarred my back and threw me to the floor, threw my baby against the dashboard. I bumped my head on the board." She was given emergency treatment at the Mercy Hospital and on the following day came under the care and treatment of Dr. N. T. Segal. In August, 1951, Dr. Segal "fluoroscoped" Mrs. Turley's back and referred her to an orthopedic surgeon, Dr. M. S. DeRoy who performed an operation on her which he described as follows: "It is an operation through the spine exposing the spinal cord and the roots as they come off, like the branches of a tree, and taking the portion of the disc which is between the vertebrae and which has slipped out of place, removing that portion of the disc, which is cartilage which is about the size and shape of a silver dollar between each vertebra."

In March, 1954, this operation was repeated on a higher disc (between the fourth and fifth lumbar vertebrae.) In June, 1954, Mrs. Turley was sent to the hospital for the third time, this time for "manipulation at which time the various strengths of the back are brought through a range of motion in an effort to overcome any twisting or locking that may have occurred."

Dr. DeRoy testified that it was his opinion, based on the history of the accident and the symptoms of the patient, that her condition was the result of the accident of December 26, 1950; also that she has suffered a permanent physical impairment with a disability of 25%. Although prior to the accident Mrs. Turley enjoyed good health and was engaged in lucrative em-

ployment, she now is compelled to wear a brace on her back, she cannot maintain an even balance, falls repeatedly and is subjected to considerable pain.

In seeking judgment n.o.v., the defendant urges that both plaintiffs were guilty of contributory negligence as a matter of law. There is nothing in the record which would remotely suggest legal contributory negligence on the part of the plaintiff driver. In his brief, counsel for the defendant quotes from various portions of the plaintiff's testimony which he urges show contributory negligence. We do not so read the record, but if there is anything in that testimony which seems to favor the defendant's version of the accident, the resulting issue was strictly a question of fact for the jury to decide. In the very recent case of *Smith v. Flannery*, 383 Pa. 526, 530, we said: "But even if there was any discrepancy in his testimony it was for the jury to reconcile the statements." Quoting from *Ely v. Pittsburgh, Cincinnati, Chicago* and *St. Louis Railway*, 158 Pa. 233, we said further: " 'Unless, therefore, his negligence appears affirmatively, he is entitled to go to the jury on the general presumption against it, and so likewise where the evidence is conflicting. . .' "

Nor was there even a scintilla of evidence to suggest that the wife-plaintiff contributed to the happening of the accident. She took no part in the operation or direction of the car, she was caring for her baby at the time and she specifically stated that she did not know the nature of the traffic conditions at the point of the collision.

In the lower Court the defendant also moved for a new trial which was refused. In affirming the decision of the lower Court refusing the new trial, as we also affirm its decision refusing judgment n.o.v., we quote with approval from the Opinion of Judge ELLEN-

BOGEN as follows: "The motion for a new trial is equally without merit. Defendant's complaint as to the ruling of the court permitting the plaintiffs to amend the bill of complaint so as to allege loss of earnings on the part of the wife is without merit. The complaint as originally filed, in Paragraph 11, alleges that '. . . the husband plaintiff has been and will be deprived in the future of the services, *earnings,* society and companionship of his wife; . . .' (underlining [Italics] ours). This was adequate notice to the original defendant of a claim on the part of plaintiffs for loss of the wife's earnings. The fact that, as a matter of law, the right *to recover the loss of earnings belongs to the wife and* not to the husband, as originally pleaded, does not dispel the fact that defendant had adequate notice that a claim was being made for the loss of the wife's earnings. The plea of surprise and for a continuance was properly denied.

"The original defendant also contends that the verdict of $15,000.00 in favor of the female plaintiff is excessive. As a result of the injuries sustained in the accident, the wife had to undergo two operations for the removal in each instance of a disc or part of a disc that had been displaced and was pressing on the nerve roots of the sciatic nerve, causing her great pain and incapacitating her. For the first operation the wife was admitted to the Montefiore Hospital on September 15, 1951, the operation was performed on September 18, and she was released from the hospital on October 13, 1951, after a stay of almost one month. For the second operation, the wife was admitted on March 4, 1954, and remained until April 6, 1954. She was obliged to return to the hospital in June, 1954, for a stay of almost two weeks for a manipulation of her limbs while under an anesthetic. There is no ques-

tion but that the woman plaintiff suffered great pain since the accident occurred; that she was totally incapacitated for substantial periods of time, and that she has sustained a substantial loss of earnings and a permanent partial disability affecting her present and future earning power. The injuries were severe and lasting and will be with the wife as long as she lives.

Under the circumstances, we cannot say that the amount of the verdict is so large as to be unreasonable or shocking to our conscience."

Judgments affirmed.